## BROADBENT v. UNITED STATES WAR SHIPPING ADMINISTRATION.

## SAME v. MOORE–McCORMACK LINES, Inc.

District Court, E. D. Pennsylvania.
April 30, 1947.

See also, 5 F.R.D. 220.

Freedman & Goldstein, of Philadelphia, Pa., for plaintiff.

Gerald A. Gleeson, U. S. Atty., of Philadelphia, Pa., and Thomas H. Walker, Sp. Asst. to the Atty. Gen., for defendants.

WATSON, District Judge.

The above captioned cases were consolidated and tried at the same time by the Court without a jury.

William S. Broadbent, hereinafter referred to as the plaintiff, brought the suits alleging the following causes of action: (a). Damages recoverable under the Jones Act, 46 U.S.C.A. § 688; (b). Maintenance and cure recoverable under "General Admiralty Law"; (c). Overtime wages allegedly earned but not paid; and (d). War Risk Insurance proceeds for his alleged disability.

### Discussion.

Plaintiff was employed aboard the S. S. Mormacsul in the capacity of ordinary seamen in April, 1942. The ship sailed from Philadelphia to Iceland, joining a convoy at Halifax. After a stop-over in Iceland, the vessel set out in convoy for Murmansk, Russia, and it was on this leg of the trip that the ship was sunk as a result of aerial attack. Plaintiff, with other men, was picked up and taken to Murmansk, Russia by a British corvette, where he remained until he was repatriated, arriving in the United States July 27, 1942.

It was testified to by the plaintiff and others that, on leaving Iceland, the boatswain ordered the midship deck "fish oiled" with a mixture of "fish oil, kerosene, and some kind of slop oil"; that the entire midship deck was covered with this oil except for certain passageways, where no oil was applied; that the crew complained about the oiling because in case of emergency it would be necessary to cross the oiled deck in order to get to the boat deck, where the life-saving equipment was stored.

Plaintiff testified that he had obtained permission to leave his post and go "aft" to the toilet, when the attacking airplane appeared; that, in running in alarm to the boat deck, he slipped on the oily deck and fell backwards, striking his right hand against the steel hatch coaming; that he repeatedly informed the proper authorities that he had received this injury and that he received no attention therefor until August 6, 1942, when he returned to Philadelphia and reported to the United States Public Health Service station for treatment.

Defendants' testimony was contrary to plaintiff's on two important points; first, that the deck of the sunken vessel was never oiled with anything; and, second, that the examination made of the plaintiff did not reveal any injury whatsoever, and that plaintiff himself did not report an injury to any qualified officer at any time.

One Whitaker, the former Chief Officer of the vessel, testified that the vessel had been freshly painted. This is relevant, since the purpose of the oiling was to prepare the deck for scraping off rust. Lieutenant Slavin and Captain Nygren also corroborated the testimony that there had been no oiling of the deck before the time of the aerial attack.

Plaintiff and the boatswain testified that the deck had been oiled, was in very slippery condition, and that requests to have the deck sprayed with sand were ignored.

Defendants' explanation of oil on the deck is, that it resulted from the explosion of bombs from the attacking airplane, and

defendants assert that, at the time plaintiff allegedly slipped, he was on his way to the boat deck after the attack, and was not on his way to the toilet before the attack and before any missile was dropped.

The second point of disagreement revolves about the plaintiff's alleged injury. Plaintiff alleges severe pain and discoloration of his hand, proper notification to proper authorities of his injury, and lack of treatment until he visited the United States Public Health Service in Philadelphia.

Defendants, on the other hand, offered testimony to the effect that plaintiff made no complaint to any one that he was injured; that he did not report any injury on two occasions when he was specifically asked if he was injured; that he did not request medical treatment when it was available; that both left and right hands and wrists were X-rayed after his return and no evidence of fracture or dislocation was disclosed.

The Court had ample opportunity to observe the witnesses and to take into consideration all the testimony.

As to the action for overtime wage pay, the testimony reveals the following: That all work records were lost in the sinking of the ship, and it became necessary for the men themselves to make and submit estimates of the number of hours they worked; that the plaintiff signed a slip, or statement, and receipted for payment for 117 hours, but now claims payment for 18 hours more. There is no allegation of fraud or coercion on the part of the defendants, but simply an allegation that he should receive more compensation than he first claimed and receipted for.

The seriousness of the plaintiff's claim is very gravely hindered by the fact that he shipped out to sea again on the S. S. Gulf Maracaibo on September 29, 1942, less than two months after his first visit to the United States Public Health Service in Philadelphia, and just two months and two days after the date up to and including which he was paid his wages. This leaves a gap of two months at the most that plaintiff was without employment. This Court cannot be gravely impressed with the degree of disability suffered by the plaintiff, since he

was almost immediately returned to a position of active duty, for which he was undoubtedly fit.

The evidence as to insurance of plaintiff against loss of life and bodily injury due to risks of war and warlike operations is very meagre, although there was offered and received in evidence what was said to be a blank form of insurance policy which should apply to this case. The clause of the policy, under which plaintiff contends he should recover, reads as follows:

"Schedule 3. Disability. For accidental bodily injury not described in Schedule 2 which, within 90 days from date of accident from a cause hereinbefore set forth, results in total disability and which necessarily and continuously prevents the person injured from performing any and every kind of duty pertaining to such person's occupation, the Assurer will pay compensation in monthly installments at the rate of 2 percent of the principal sum, beginning with the date of return to a port within the continental United States, during such time thereafter as the total disability persists or until such time as the total of compensation, so paid, shall amount to the principal sum provided for the injured person in Schedule 1."

There is no evidence in this case to support a finding that the plaintiff was at any time prevented from performing any and every kind of duty pertaining to his occupation. The fact that he did not perform such duties does not mean that he was unable to do so.

Plaintiff's right to recover the cost of maintenance and cure is separate from his right to recover under the Jones Act. The plaintiff contends that he was injured in the service of the ship. There is evidence to the effect that his injury required medical attention and care from August 6, to September 29, or 54 days. It was stipulated by counsel that the cost of maintenance and cure should be $3 per day.

### Findings of Fact.

1. The plaintiff and libellant was employed aboard the S. S. Mormacsul as an Ordinary Seaman.

2. The Mormacsul was owned by the respondent, United States of America, through the War Shipping Administration.

3. The defendant, Moore-McCormack Lines, Inc., entered into an agreement with the United States of America to operate the Mormacsul.

4. The midship deck of the Mormacsul was not oiled with fish oil or any greasy and slippery substance at any time prior to the sinking on May 27, 1942, and subsequent to the departure from Philadelphia on its trip to Iceland.

5. The midship deck had to be traversed to reach the ladders leading to the boat deck on which were kept the lifeboats, life rafts, and other life-saving equipment.

6. On May 27, 1942, the Mormacsul was attacked by enemy aircraft and sunk.

7. In leaving the stricken craft plaintiff fell on the midship deck and injured his right hand.

8. The plaintiff sought no medical treatment for his injuries, made no complaint to any one, and did not report any injury until he returned to the United States, when he applied for and received treatment at the United States Public Health Service in Philadelphia.

9. Plaintiff's injury required medical attention and care from August 6 to September 29, and was treated from time to time during that period at the United States Public Health Service.

10. Plaintiff was requested by the Chief Officer to submit his list of hours worked, which he did.

11. Plaintiff was paid and admitted receipt of the entire amount of overtime appearing upon his overtime slip.

12. No injury which plaintiff received prevented him from performing any and every kind of duty pertaining to his occupation.

13. Plaintiff was at no time totally disabled.

14. No negligence act on the part of the Moore-McCormack Lines, Inc., its agents or employees, caused an injury to the plaintiff.

15. There was no negligence on the part of Moore-McCormack Lines, Inc.

### Conclusions of Law.

1. The defendant, Moore-McCormack Lines, Inc. is not liable to the plaintiff for damages suffered by the plaintiff on account of any injuries which he may have received in the sinking of the ship, or at any other time.

2. The plaintiff is not entitled to recover damages in any amount from the Moore-McCormack Lines, Inc.

3. The plaintiff, having injured himself in the service of the ship of the defendant, is entitled to cost of maintenance and cure at the rate of $3 a day for 54 days, or a total of $162.

4. The plaintiff is not entitled to any additional wages, and neither the defendant, Moore-McCormack Lines, Inc. nor the respondent, United States of America, are liable therefor.

5. The burden was upon the plaintiff to show by legal evidence that he received an injury which, within 90 days resulted in total disability, and which necessarily and continuously prevented him from performing any and every kind of duty pertaining to his occupation. The plaintiff failed to meet that burden, and is not entitled to recover in the action on the insurance policy.

Now, April 30, 1947, the Clerk of this Court is directed to enter judgment against the defendant, Moore-McCormack Lines, Inc. in Civil Action No. 3049 in the amount of $162, and to enter judgment in favor of the respondent, United States of America, in No. 15 of 1944 in Admiralty.

The action in No. 15 of 1944 in Admiralty as to War Shipping Administration is dismissed.